IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JOHN L. HILL                                                          PETITIONER
(ADC #119492)
V.                          NO. 4:20-01390-JTR

DEXTER PAYNE, DIRECTOR,
ARKANSAS DIVISION OF
CORRECTION                                                          RESPONDENT

## AMENDED PETITION FOR
## WRIT OF HABEAS CORPUS

John L. Hill (hereinafter "Hill"), age fifty-eight (58), petitions the Court for a writ of habeas corpus under 28 U.S.C. §2254 on the ground that he is in the custody of the Arkansas Department of Correction pursuant to convictions for Possession of a Firearm by Certain Persons and Committing a Terroristic Act, and an aggregate sentence of forty-two (42) years in prison, imposed in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution for the reasons set out below.

### Background of the Case

On November 9, 2018, Hill was charged by Felony Information in the Hempstead County, Arkansas Circuit Court with two counts of Attempted Murder in the First Degree (Counts 1 and 2); two counts of Committing a Terroristic Act (Counts 3 and 4); and Possession of a Firearm by Certain Persons (Count 5). The State also sought a sentencing enhancement based on Hill's alleged use of a firearm in the commission of a felony. A "small habitual" charge was also included in the Information based on "more than one but less than four" prior felony convictions Hill had. The charges against Hill were levied following a domestic dispute between Hill and his wife, Brenda Hill. A copy of the Information is submitted to the Court contemporaneously but separately as Petitioner's

1

Exhibit A.

Hill retained Ashdown attorney Mickey Buchanan to represent him. Plea discussions were engaged in, and the State (by and through prosecuting attorney Christi McQueen) eventually extended a written plea offer on or about March 27, 2019. The offer required Hill to (a) plead guilty to two (2) counts of Committing a Terroristic Act with thirty (30) years in prison on each count, to be served concurrently, and (b) plead guilty to one (1) count of Felon in Possession of a Firearm with twelve (12) years in prison, to be served consecutively to the thirty (30) year sentence, for a total of forty-two (42) years in prison. A copy of the plea offer is submitted to the Court separately as Petitioner's Exhibit B. Prior to the offer, defense counsel had discussed the issue of parole eligibility for Hill. Ms. McQueen informed counsel that if Hill accepted the offer, he would become parole eligible after serving roughly seven (7) years in prison. Ms. McQueen further told counsel that she had discussed it with Brenda Hill; that Brenda did not want Hill to remain in prison for an extremely long time but she did want him to serve at least some time; that approximately seven (7) years of actual incarceration was an acceptable amount of time for her; and that she was therefore agreeable to the plea offer contemplated by Ms. McQueen.

Counsel communicated this offer to Hill, and the two engaged in discussions about it. During those discussions, counsel informed Hill that if he accepted the offer he would be required to serve approximately seven (7) years in prison before becoming parole eligible. *See* Petitioner's Exhibit C (affidavit of Mickey Buchanan) (submitted separately).

Relying on this assurance by counsel, Hill decided to accept the State's offer. He was fifty-seven (57) years of age at that time. On April 4, 2019, Hill entered a plea of guilty to the amended charges of (1) Committing a Terroristic Act and (2) Possession of a Firearm by Certain Persons. He was sentenced to thirty (30) years and twelve (12) years, respectively,

to be served consecutively for a total of forty-two (42) years in prison. The <u>Sentencing Order</u> was entered on May 10, 2019. *State v. John L. Hill,* Hempstead County No. CR 2018-394. A copy of that document is submitted separately as Petitioner's Exhibit D.

Hill remained in county custody until early September of 2019 when he was transferred to the ADC Diagnostic Unit in Malvern. It was then and there that he received his first time card. The card showed that he was required to serve one hundred percent of his entire thirty (30) year sentence under Act 1805[1] because under Arkansas law, the crime of Committing a Terroristic Act is a "felony involving violence" and he has a prior Oklahoma conviction for a comparable "felony involving violence." Apparently, this consists of a conviction for assault or battery, entered in May of 2012 in Woodward County, Oklahoma, for which Hill received a ten year suspended sentence. *State of Oklahoma v. John Hill,* Woodward County, Oklahoma No. CF-2011-00431. Prior to the entry of Hill's plea in the present case, neither his attorney nor the prosecutor had discussed the Oklahoma conviction with Hill or informed him about how it would affect the total amount of time he would be required to serve on the current convictions. To the contrary, as stated above Hill was clearly and consistently told that if he pleaded guilty he would be required to serve roughly seven years before becoming parole eligible. As it turns out, however, Hill (age fifty-eight (58)) must serve the entire thirty (30) years of his sentence (plus twelve (12) years on his conviction for Felon in Possession of a Firearm). September of 2019 was when Hill first learned that he fell under Act 1805 and must serve his entire thirty (30) year sentence. Unless relief is granted, Hill will be at least ninety (90) years old when he is eligible for release. As a practical matter, his current sentence is a life sentence - and a sentence of death

---

1 Act 1805 (Arkansas' "one hundred percent" law) is codified at Ark. Code Ann. 16-93-609 and Ark. Code Ann. 5-4-501(d)(2).

- for him.

Hill did not file a timely petition for post-conviction relief under Ark. R. Crim. P. 37 because during the Rule 37 ninety (90) day time period,[2] he was still reasonably under the impression that he would become parole eligible after serving roughly seven (7) years. In other words, the factual basis for the claims raised in this habeas petition was not reasonably available to him in time for him to seek relief under Rule 37. As will be developed further during the course of these proceedings, Hill's reasonable belief that he would become parole eligible after serving seven (7) years of his total his sentence continued until early 2020 because of assurances given to him by defense counsel he was working to "fix" the problem with his sentencing.

Hill's state remedies are exhausted. With the benefit of equitable tolling and application of the "relation back" doctrine, this amended habeas corpus petition is also timely filed under the ADEPA.

Hill further notes the standard of review that applies to each of the claims raised in this petition.

The language of 28 U.S.C. §2254(d) expressly limits the provision's applicability to claims that were "adjudicated on the merits in State court proceedings." Hertz & Liebman, Federal Habeas Corpus Practice & Procedure §32.2 (6th Ed.). *See generally Williams v. Taylor,* 529 U.S. 362, 404 (2000). In *Cone v. Bell,* 556 U.S. 449 (2009), the Supreme Court specifically stated: "Because the Tennessee courts did not reach the merits of Cone's *Brady* claim [and instead rejected the claim on procedural default grounds], federal habeas review is not subject to the deferential standard that applies under the AEDPA to 'any claim that was

---

2 Ark. R. Crim. P. 37.2(c)(i) provides that in a guilty plea case, a Rule 37 petition must be filed within ninety (90) days after entry of judgment. This is a jurisdictional time limit, meaning it cannot be extended.

adjudicated on the merits in State court proceedings.' 28 U.S.C. §2254(d). Instead, the claim is reviewed *de novo*." *See also Reagan v. Norris*, 365 F.3d 616, 621 (8th Cir. 2004) ("since this claim of ineffective assistance [for failing to object to a jury instruction that omitted an element of the offense] was not presented to the state appellate courts . . . there is no state court adjudication of this claim, and we need not apply the AEDPA's deferential standard of review").

That is precisely the situation here. Because there has been no state court adjudication on the merits of any of Hill's three claims, §2254(d) does not apply and this Court should review the claims *de novo*. *See* Hertz & Liebman, <u>Federal Habeas Corpus Practice & Procedure</u> §32.2 n.5 & 6 (collecting cases).

**Claims for Relief**

**I.**

**HILL'S GUILTY PLEAS WERE NOT KNOWINGLY, VOLUNTARILY, OR INTELLIGENTLY ENTERED AND WERE BASED ON INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS.**

The standard for evaluating claims of ineffective assistance of counsel is well settled. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court recognized that the right to effective assistance is essential to protect the fundamental right to a fair trial. *Id.* at 684-685. To prevail on a claim of ineffective assistance, it must be shown that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Id.* at 687. Counsel's performance is held to the standard of reasonable professional assistance, and he has a duty to bring "such skill and knowledge as will render the trial a reliable adversarial testing process." *Id.* at 688. To succeed on an ineffective assistance claim, an applicant for post-conviction relief must show that counsel's performance fell below an

"objective standard of reasonableness" and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 688, 696. *See also Williams v. Taylor,* 529 U.S. 362 (2000); *Wiggins v. Smith,* 539 U.S. 510 (2003). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Johnson v. Lockhart,* 921 F.2d 796 (8th Cir. 1991).

The *Strickland/Wiggins* standard of objective reasonableness requires that counsel make a reasonable investigation or make a reasonable decision not to conduct a particular investigation. Counsel's "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland,* 466 U.S. at 690-691. *See also Foster v. Lockhart,* 9 F.3d 722 (8th Cir. 1993). Further, "[t]he decision to interview a potential witness is not a decision related to trial strategy. Rather, it is a decision related to adequate preparation for trial." *Chambers v. Armontrout,* 907 F.2d 825, 828 (8th Cir.), *cert. denied,* 498 U.S. 950 (1990). The courts have also held that simply labeling counsel's decision(s) as "strategic" or "tactical" does not insulate them from a Sixth Amendment challenge. *See, e.g., Kellogg v. Scurr,* 741 F.2d 1099 (8th Cir. 1984). Regardless of whether trial counsel (and/or a post-conviction court) attempts to legitimize counsel's "decision" by saying it was "strategic" or "tactical," this Court must still scrutinize that decision to determine whether it was *reasonable. Roe v. Flores-Ortega,* 528 U.S. 470, 481 (2000). *See also Gabaree v. Steele,* 792 F.3d 991 (8th Cir. 2015).

In the context of a guilty plea, the standard is similar. *Hill v. Lockhart,* 474 U.S. 52, 58 (1985). It is clear that the right to effective assistance of counsel extends to the plea bargaining process. *Padilla v. Kentucky,* 559 U.S. 356 (2010); *Missouri v. Frye,* 566 U.S. 134 (2012); *Lafler v. Cooper,* 566 U.S. 156 (2012). In such cases, the performance prong

of the *Strickland* test remains the same. *Hill,* 474 U.S. at 58-59. Defense counsel's duty to conduct an adequate investigation applies whether the case goes to trial or the client pleads guilty. *Strickland,* 466 U.S. at 690-91. The American Bar Association also states: "Under no circumstances should defense counsel recommend to a defendant acceptance of a plea unless appropriate investigation and study of the case has been completed, including an analysis of controlling law and the evidence likely to be introduced at trial." ABA Standards for Criminal Justice, Prosecution Function and Defense Function 4-6.1(b)(3d Ed. 1991). *See also Padilla v. Kentucky, supra* (describing the ABA standards as "valuable measures of the prevailing professional norms of effective representation").

To establish prejudice in the context of the plea process it must be demonstrated that there is a reasonable probability that, but for counsel's error(s), the outcome of the plea process would have been different with competent advice. *Frye,* 566 U.S. at 144. The Great Writ must be granted where it is shown that there is "a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty but would have insisted on going to trial." *Id.* at 145.

Hill also notes the general standard for evaluating the constitutional validity of a guilty plea. Under the Sixth and Fourteenth Amendments, when the consensual character of a guilty plea is called into question, the validity of that plea is impaired. *Mabry v. Johnson,* 467 U.S. 504 (1984). It is a basic tenet of federal constitutional law under the Sixth and Fourteenth Amendments that a guilty plea is not valid unless it is knowingly, voluntarily, and intelligently entered. *McCarthy v. United States,* 394 U.S. 459 (1969); *Boykin v. Alabama,* 395 U.S. 238 (1969). The standard to be applied is whether the plea represents a voluntary and intelligent choice among the alternative courses of action that are open to the defendant. *North Carolina v. Alford,* 400 U.S. 25 (1970); *Gregory v. Solem,* 774 F.2d 309

7

(8th Cir.), *cert. denied*, 475 U.S. 1088 (1985).

In this case, Hill's plea was not knowingly, voluntarily, or intelligently entered and was based on ineffective assistance of counsel. Hill's plea is constitutionally invalid because trial counsel was ineffective for misadvising him regarding parole eligibility on the crime of Committing a Terroristic Act.

As discussed above, during plea negotiations Hill (and his family members) were specifically informed by trial counsel that if Hill accepted the State's plea offer and agreed to a total of forty-eight (48) years in prison, he would become eligible for parole after serving approximately seven (7) years. This was communicated to Hill and his family by trial counsel prior to Hill's acceptance of the plea offer. Hill agreed to accept the State's plea offer based on this assurance; he pleaded guilty in open court in April of 2019; the trial court accepted the plea; and the <u>Sentencing Order</u> was entered on May 10, 2019.

And as stated above, for several months (i.e., while Hill was in county custody and before he got his time card at the ADC) it appeared to Hill that this was accurate. In September of 2019, however, this changed and he learned for the first time that he fell under Arkansas' one hundred percent law (Ark. Code Ann. §5-4-501(d) and/or §16-93-609). After he learned of this, he communicated with his attorney; his attorney communicated with the prosecutor; and Hill was assured that counsel would "fix" the "error" and ensure that Hill received the benefit of his bargain. Months went by, but this was never accomplished (or upon information and belief, attempted).

As Hill states under oath in his affidavit (Petitioner's Exhibit E, submitted separately), he would not have pleaded guilty to these two charges but for the assurance given to him that he would become parole eligible after seven (7) years. Had he known that he would be required to serve his entire sentence and remain in prison until he is ninety (90) years old, he

would not have accepted the State's plea offer but would have insisted on going to trial.

In his response to Hill's initial habeas petition, the respondent trivializes this entire matter and suggests that Hill is not entitled to relief because he obtained a "greatly reduced sentence" and that "[g]iven the risk of a possible, maximum combined sentence of 220 years' imprisonment, Hill's decision to plead guilty to the lesser charges and a 42 year total sentence was not just intelligent, but wise." Response at p.18, 19. Ostrich-like, in making these assertions the respondent totally ignores the reality that for John Lindell Hill there is no practical difference between a 220 year sentence and a sentence of 30 calendar years. Either way, Hill never sees the light of day but instead dies in prison. The average life expectancy for males in Arkansas is 73 years. *See* www.worldlifeexpectancy.com/usa. In Hempstead County where Hill resided, it is only 72. Therefore, Hill will likely be dead before he even comes close to serving thirty calendar years in prison. Under these circumstances, there was no downside to taking the case to a jury trial. This is even more true based on counsel's statement under oath that this was a "very triable case." (Petitioner's Exhibit C, submitted separatey) Contrary to the respondent's assertion, parole eligibility after seven (7) years was obviously a *huge* motivator - indeed, the *only* motivator - because of Hill's advanced age. The respondent's assertion that Hill's plea to thirty flat years would have been "wise" is belied by basic common sense.

Under these circumstances, counsel was ineffective for misadvising Hill regarding parole eligibility. "Prejudice" is evident because, as stated above, Hill's decision to plead was based entirely on that misinformation. But for counsel's misadvice that he would become parole eligible in seven (7) years, Hill would not have pleaded guilty to the two (2) counts with which he was charged. Indeed, this case is virtually identical to *Garmon v. Lockhart,* 938 F.2d 120 (8th Cir. 1991) and *Hale v. Lockhart,* 903 F.2d 545 (8th Cir. 1990), both legally

and factually. The law in the Eighth Circuit is well settled here, and it is clear in this case

that both prongs of the *Strickland v. Washington/Hill v. Lockhart* standard are satisfied.

There remains the question of the appropriate remedy. In *Cooper,* the Supreme Court

stated:

> Sixth Amendment remedies should be "tailored to the injury suffered from the
> constitutional violation and should not unnecessarily infringe on competing
> interests." *United States v. Morrison,* 449 U.S. 361, 364 (1981). Thus, a
> remedy must "neutralize the taint" of a constitutional violation, *id.,* at 365,
> while at the same time not grant a windfall to the defendant or needlessly
> squander the considerable resources the State properly invested in the criminal
> prosecution. See *Mechanik,* 475 U.S., at 72 ("The reversal of a conviction
> entails substantial social costs: it forces jurors, witnesses, courts, the
> prosecution, and the defendants to expend further time, energy, and other
> resources to repeat a trial that has already once taken place; victims may be
> asked to relive their disturbing experiences").

566 U.S. at 166-67. The district court in *Cooper* granted a writ of habeas corpus and ordered

"specific performance" of the prisoner's original plea offer as the remedy, and the Sixth

Circuit affirmed. 376 Fed. Appx. 563. The Supreme Court modified this remedy slightly,

holding that the appropriate remedy was to order the State to re-offer the plea (which is

essentially the same remedy).

Under the rationale of *Cooper,* then, the appropriate remedy is for this Court to grant

the writ and order the State of Arkansas to "neutralize the taint" by offering Hill a plea that

will ensure he becomes eligible for parole in roughly seven years. This could be a plea offer

to the crime of Committing a Terroristic Act and a total sentence of seven (7) years in prison,

or it could be an amendment to the Information to charge Hill with a crime that is not among

the list of felonies "involving violence" in Ark. Code Ann. §5-4-501(d). The bottom line,

though, is that Hill is entitled to the benefit of the bargain he entered into with the State of

Arkansas.

The Court should accordingly grant Hill an evidentiary hearing and grant the Great

Writ on this claim.

## II.

### HILL'S GUILTY PLEAS WERE NOT KNOWINGLY, VOLUNTARILY, OR INTELLIGENTLY ENTERED BECAUSE THEY WERE THE PRODUCT OF PROSECUTORIAL MISCONDUCT.

Hill's pleas must be set aside for an additional reason: Not only was trial counsel ineffective but the prosecuting attorney also engaged in misconduct (intentionally or unintentionally) by withholding from defense counsel the fact that Hill had a prior violent felony conviction out of Oklahoma. As discussed above defense counsel obviously had a professional duty to learn about Hill's criminal history on his own and determine what impact it might have. Notwithstanding defense counsel's failure here, the State also had an obligation to Hill's criminal history. The prosecutor's failure or refusal to do so left defense counsel unaware of the conviction and, as a result, he failed to inform Hill that he fell under Act 1805. This, in turn, led to a plea that was not knowingly, voluntarily, or intelligently entered.

Prior to trial, defense counsel filed a standard discovery motion under Ark. R. Crim. P. 17. (Petitioner's Exhibit F, submitted separately) Among other things, counsel specifically requested that the State disclose "[a]ll record of prior criminal convictions of persons the prosecuting attorney intends to call as witnesses at any hearing or trial, if the prosecuting attorney has such information or it can be readily obtained by him." Additionally, counsel requested "[a]ny . . . documentary . . . evidence the State intends to introduce or use at any hearing or at trial." Counsel's discovery request obviously included a request for all information about Hill's prior conviction(s). Indeed, since the State alleged in the Information that Hill fell under the "small habitual" statute with more than one but less

than four prior felony convictions, it is obvious that the State intended to introduce proof of Hill's Oklahoma conviction at trial in order to obtain a "small habitual" sentence enhancement.

And, as defense counsel's affidavit establishes, the prosecutor (Christi McQueen) was aware of Hill's conviction in Oklahoma because she specifically discussed it with Hill's wife during plea negotiations. *See* Petitioner's Exhibit C. Nevertheless, according to trial counsel the prosecutor failed or refused to disclose it. *Id.* Ms. McQueen is a seasoned prosecuting attorney with many years of experience. She was and is well aware of Act 1805 and is actually quite familiar with it. It is difficult to believe that Act 1805 did not cross her mind during her pre-plea discussions with defense counsel. If she was aware of the Oklahoma conviction (and trial counsel has sworn under oath that she was aware of it), she also either knew or should have known that it would be applied to Hill if he pleaded guilty to Committing a Terroristic Act. Yet, she told defense counsel that she expected Hill (if he took the plea deal) to become parole eligible in approximately seven (7) years into his forty-two (42) year sentence. This amounted to misconduct, and it completely undermined the knowing, voluntary, and intelligent nature of Hill's plea. And this is true regardless of whether it was intentional or unintentional.

The United States Supreme Court has held that a prisoner may collaterally attack his sentence on the ground that his guilty plea was not knowing or voluntary if his claim is based on evidence not available to him at the time of the plea. *Machibroda v. United States,* 368 U.S. 487, 493 (1962); *Waley v. Johnson,* 316 U.S. 101, 104 (1942. *See also United States v. Bagley,* 473 U.S. 667, 682-83 (1985) (suggesting that an incomplete response by the prosecution could "represent to the defense that the evidence does not exist" and cause the defense "to make pretrial and trial decisions on the basis of this assumption"); *Matthew v.*

*Johnson,* 201 F.3d 353, 364 n.15 (5th Cir. 2000) (there may be situations in which the prosecutor's failure to disclose evidence makes it impossible for a defendant to enter a knowing and intelligent plea); *Ferrara v. United States,* 456 F.3d 278, 293 (1st Cir. 2006) ("the fact that the government partially complied with its automatic discovery obligations does not show that it engaged in no impermissible conduct;" "the government's nondisclosure was so outrageous that it constituted impermissible prosecutorial misconduct sufficient to ground the petitioner's claim that his guilty plea was involuntary"); *Miller v. Angliker,* 848 F.2d 1312, 1320 (2d Cir. 1988) ("even a guilty plea that was 'knowing' and 'intelligent' may be vulnerable to challenge if it was entered without knowledge of material evidence withheld by the prosecution"); *Campbell v. Marshall,* 769 F.2d 314, 318, 321 (6th Cir. 1985) ("the question then becomes whether this nondisclosure renders involuntary Campbell's otherwise voluntary plea, given without knowledge of this evidence;" . . . "we believe that in *Tollett* [*v. Henderson*, 411 U.S. 258 (1973)] and the *Brady* Trilogy the Supreme Court did not intend to insulate all misconduct of constitutional proportions from judicial scrutiny solely because that misconduct was followed by a plea which otherwise passes constitutional muster as knowing and intelligent"); *Correale v. United States,* 479 F.2d 944, 947 & n.3 (1st Cir. 1973). The issue here is not whether John Hill knew he had a prior felony conviction from Oklahoma. More important here is the fact that without the guiding hand of counsel, Hill was totally unaware of the legal significance of that conviction. The foul committed here was not the fact that *Hill* was not told about the conviction; the foul was committed when the prosecutor did not disclose the conviction from *defense counsel* and thereby prevented him from accurately informing Hill about parole eligibility.

A line was crossed here, and as stated above it invalidates Hill's guilty plea as a matter of due process. But for the prosecutor's misconduct in this regard, Hill would not

have pleaded guilty to Committing a Terroristic Act and a flat sentence of thirty (30) years.

The Court should grant a hearing and the Great Writ on this claim.

### III.

### HILL IS ENTITLED TO SPECIFIC PERFORMANCE OF THE "CONSTITUTIONAL CONTRACT" HE ENTERED INTO WITH THE STATE OF ARKANSAS AS A MATTER OF DUE PROCESS.

In *Santobello v. New York,* 404 U.S. 257 (1977), the Supreme Court took up the issue

of whether due process is violated when the State fails to keep a commitment concerning the

sentence recommendation on a guilty plea.  The Court reasoned:

> The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called "plea bargaining," is an essential component of the administration of justice.  Properly administered, it is to be encouraged.
>
> . . .
>
> Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons.  It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and, by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned.  See *Brady v. United States,* 397 U.S. 742, 751-752 (1970).
>
> However, all of these considerations presuppose fairness in securing agreement between an accused and a prosecutor.
>
> . . .
>
> This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances.  Those circumstances will vary, but a constant factor is that *when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.*

14

The Court ultimately held that the defendant/prisoner was entitled to the benefit of his bargain as a matter of due process. Regarding relief, the Court stated:

> The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, i.e., the opportunity to withdraw his plea of guilty.

404 U.S. at 263.

Hill's situation is similar to that of the defendant in *Santobello,* and he is likewise entitled to relief and an Order giving him the benefit of the bargain he entered into with the State of Arkansas. The Court should grant a hearing and the Great Writ on this claim.

### **Respondent's Defenses**

### **Limitations**

The respondent asserted in his response to Hill's initial petition that Hill's first claim (Claim I - the only claim raised in the initial petition) is barred by the AEDPA's one year limitations period. Hill's <u>Sentencing Order</u> was entered on May 10, 2019. In the garden variety guilty plea case, the limitations period would ordinarily have begun to run on June 9, 2019 (thirty (30) days after May 10). *Camacho v. Hobbs,* 774 F.3d 931 (8th Cir. 2015)). This is the date stated by the respondent as the starting date for Hill's one year period.

However, in making this assertion the respondent ignores 28 U.S.C. §2244(d)(1)(D), which provides that the limitations period begins to run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." For the reasons stated *infra,* and contrary to the respondent's calculations, John Hill's one year time limit did not begin to run until he first became reasonably aware that he had been sentenced under Act 1805. As discussed *infra,* that happened during the

15

first week of September in 2019.  And *that, not June 9, 2019,* is "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  Therefore, absent statutory and/or equitable tolling, Hill's limitations period expired at some point in early September of 2020.  Hill filed his habeas petition on November 24, 2020, so unless Hill is entitled to tolling, his petition is late by perhaps two to three months.  These time calculations apply not only to Claim I but also to the two additional claims (Claim II and Claim III) raised in the instant amended petition.

Hill acknowledges he is not entitled to statutory tolling of the limitations period.  He filed a petition for state post-conviction relief under Ark. R. Crim. P. 37 in the trial court, but he did not file it within ninety (90) days after entry of the Sentencing Order - a jurisdictional requirement under Ark. R. Crim. P. 37.2(c)(I).  For that reason, the petition was not "properly filed" and he is not entitled to statutory tolling under 28 U.S.C. §2254(d)(2).  *Artuz v. Bennett,* 531 U.S. 4 (2000).

However, Hill *is* entitled to equitable tolling on all three claims.

In *Holland v. Florida,* 560 U.S. 1 (2010), the Supreme Court held that equitable tolling of the AEDPA's one-year limitations period may apply in certain circumstances.  The Court made it clear that the AEDPA is a nonjurisdictional federal statute of limitations and that it, like other federal limitations statutes, is subject to a "rebuttable presumption in *favor* of equitable tolling."  560 U.S. at 13 (emphasis in original).  The Court noted that it had "previously made clear that a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in the way" and prevented timely filing."  *Id.* at 16-17.  The Eighth Circuit has also held that equitable tolling applies if the prisoner has been "lulled into inaction."  *Shoemate v. Norris,* 390 F.3d 595 (8th Cir. 2004) (citing *Kreutzer v. Bowersox,* 231 460, 463 (8th Cir. 2000), *cert.*

*denied,* 534 U.S. 863 (2001)).   Further, to benefit from equitable tolling the prisoner must only exercise "*reasonable* diligence, not *maximum feasible diligence.*" *Holland,* 560 U.S. at 653.   The Court in *Holland* ultimately extended the benefit of equitable tolling to a petitioner who, because of inexcusable attorney neglect, failed to file his federal habeas petition within the one year period.   In doing so, the Court placed its stamp of approval on lower court decisions to the effect that a petitioner who had been "effectively abandoned" by his attorney was entitled to tolling.   *Id.* at 19 (quoting *Calderon v. United States District Court for Cent. Dist. Of Cal.,* 128 F.3d 1283, 1289 (9th Cir. 1997).

Hill is entitled to equitable tolling, first, because he exercised his rights diligently and was "lulled into inaction" by his trial counsel and the prosecutor.   As we have already made clear, Hill was under the impression when he pleaded guilty that he would become eligible for parole after serving a small portion of his total sentence.   He was under that impression because (1) that is what he was assured by his trial counsel and (2) the Sentencing Order itself indicates that he was sentenced pursuant to Ark. Code Ann. §5-4-501(b), *not* §5-4-501(d).   (Subsection (d) is the subsection that provides a list of felonies deemed "violent" for purposes of Act 1805.)   As Hill's Affidavit (Petitioner's Exhibit E) makes clear, it was not until September of 2019 - roughly four (4) months after his guilty plea and entry of judgment - that he first became reasonably aware that he had been sentenced under Act 1805 (Arkansas' "one hundred percent" law).[3]   Hill is serving his thirty (30) year sentence under Act 1805 because he has a "prior violent felony" conviction from Oklahoma.

Counsel for Hill was unaware of this prior conviction; however, *Strickland* required that he learn about it.   Although according to trial counsel there is nothing in the discovery

---

3 This, of course, was also more than ninety (90) days after entry of judgment, which explains why Hill did not raise this claim in a timely Rule 37 petition.   The legal significance of this is discussed *infra* in our discussion regarding procedural default and "cause."

provided by the State that mentions it,[4] trial counsel in a criminal case may not rely on the prosecutor's file as a substitute for his own investigation. *Thomas v. Lockhart,* 738 F.2d 304, 306 (8th Cir. 1984) ("Barker's investigation of the case consisted of reviewing the investigative file of the prosecuting attorney. . . . Appellant contends that Barker's review of this material in the prosecutor's file constitutes adequate investigation of Thomas' case. We do not agree."). *See also* ABA Standards for Criminal Justice, Prosecution Function and Defense Function 4-6.1(b) (3d Ed. 1993):

> Under no circumstances should defense counsel recommend to a defendant acceptance of a plea unless appropriate investigation and study of the case has been completed, including an analysis of controlling law and the evidence likely to be introduced at trial.

*Accord, Padilla v. Kentucky,* 559 U.S. 356 (2010) (describing the ABA standards as "valuable measures of the prevailing professional norms of effective representation"); *Strickland,* 466 U.S. at 690-91. It goes without saying that trial counsel could not provide reasonable professional assistance to Hill in the plea negotiation process without this knowledge (along with an awareness and an understanding of Act 1805). *See Hill v. Lockhart,* 877 F.2d 698, 704 (8th Cir. 1989) ("[t]o advise his client correctly, the lawyer needed no crystal ball; he had only to consult the Arkansas Statutes and determine the provision applicable to second offenders. . . . Act 93, which had been in effect for over two years by the time Hill pleaded guilty, posed no special research challenge"). Obviously, if counsel knew about the prior violent felony and understood Act 1805, he could and should

---

4 The undersigned recently sought and obtained the prosecutor's file and trial counsel's file. The prosecutor's file consists of multiple CD's and flash drives. To be candid, the Oklahoma conviction does appear briefly on one of those CD's. It took time and effort to find it, but it is there. It is attached to this pleading as Petitioner's Exhibit I. But it is unclear whether what the undersigned was provided and what trial counsel was provided are identical. Trial counsel, of course, says that the information did not appear in what he was provided.

have informed Hill that any plea he entered to the crime of Committing a Terroristic Act would place him under Arkansas' "one hundred percent" law.

As Hill's affidavit makes clear, when he pleaded guilty and began serving his sentence pursuant to his convictions in May of 2019, he remained in the county jail until early September of that year. It was then that he was transferred to actual ADC custody at the Diagnostic Unit, and it was then and there (in early September of 2019) that he received his first time card. Hill does not currently have possession of that time card but he has requested it and we expect to receive a copy soon.[5] When we receive it, we will submit it to the Court as an exhibit. Hill's second time card, submitted separately as Petitioner's Exhibit G, is to the same effect though: It shows that Hill's thirty (30) year sentence for Committing a Terroristic Act is to be served under Act 1805. Again, it was not until Hill received his first time card in September that he reasonably became aware that he was required to serve one hundred percent of his thirty (30) year sentence. Up until that time, he was completely under the impression that what he had been told prior to his plea was correct: that he would become parole eligible after serving one-third (1/3) of his sentence, with credit for good time.

When Hill learned of this for the first time in September, he informed his sister (Dorothy Adams) and she contacted trial counsel. *See* Ms. Adams' affidavit (submitted separately as Petitioner's Exhibit H). Trial counsel informed Ms. Adams that he would explore the matter and determine why Hill was not receiving the benefit of the parole eligibility that was contemplated by trial counsel, by Hill, and even by the prosecutor leading up to the entry of Hill's plea. Trial counsel checked on the matter and also learned that Hill was under Act 1805 because of the Oklahoma conviction. (There was no mention of that conviction at any point during plea negotiations. Hill, obviously, was aware of it, but he had

---

5  The Attorney General can also easily obtain a copy of this document.

no idea that it had any parole-related ramifications.)

Trial counsel also contacted the prosecuting attorney about the matter. He was told that she was aware of the Oklahoma conviction but did not think it mattered and that, like she indicated to trial counsel during plea negotiations, the intent and expectation of all involved was that Hill would become parole eligible after serving one-third (1/3) of his sentence with credit for good time (meaning that on paper, Hill could become parole eligible as early as after serving one-sixth (1/6) of his sentence if he received day for day good time). The prosecutor told counsel that during the negotiations the intent of all involved was for Hill to serve approximately seven years, and she pledged to make efforts to correct the problem. Discussions between trial counsel and the prosecutor were ongoing in September, October, November, and December of 2019 and into January of 2020, during which time trial counsel kept Hill informed, leading Hill to believe the problem was in the process of being corrected. During these discussions, the prospect of seeking an Amended Sentencing Order or obtaining some other type of relief in state court (to accurately reflect what was intended when Hill agreed to plead guilty) was contemplated. Ultimately, nothing was done, even though Hill was reasonably under the impression that steps were being taken to rectify the situation and ensure that he received the benefit of his bargain.

There is also no question that Hill acted with "reasonable diligence" during this entire period of time because he and Dorothy Adams maintained regular communication with counsel with the goal of resolving the problem. Dorothy Adams, who was better equipped to communicate with counsel by phone, swears under oath that she called him every week and sometimes twice a week. This is "reasonable diligence" and might even amount to "maximum feasible diligence." When Hill finally learned that nothing had been done (and that nothing would be done in the future) by his counsel, the prosecutor, or the court, he also

set about to prepare and file a petition for relief under Ark. R. Crim. P. 37. Of course, by this time Hill knew that it was too late to properly file such a petition, but the fact that he filed it anyway demonstrates that he was diligent. The petition that he did file on April 6, 2020 was dismissed, of course, because it was not filed within the ninety (90) day time limit imposed by Rule 37.2. The fact that he filed it in April of 2020 is legally irrelevant for purposes of tolling because in Arkansas, a Rule 37 petition filed even one day after expiration of the ninety (90) day time limit is just as untimely as a petition filed one hundred days late.

Under these circumstances, Hill is entitled to equitable tolling. While it is difficult to calculate the exact number of days that should be tolled, at a minimum he is entitled to six to seven months of tolling, which easily brings him within the one year limitations period. It was during this period of time (from the date of his plea in May of 2019 through at least the end of December 2019) that Hill was diligently pursuing his rights; was communicating with counsel about rectifying the injustice; and was being led to believe that steps were in fact being taken to do just that. To the extent that he did not seek post-conviction relief in the courts during that time frame, his failure to do so was obviously because he believed his lawyer was handling the matter. Clearly, Hill was "lulled into inaction," and this entitles him to a sufficient amount of tolling time to render his federal habeas corpus petition timely filed.

At a minimum, Hill is entitled to an evidentiary hearing on the question of equitable tolling. The courts have held that appropriate development of the factual record is often necessary where a petitioner has made a factual allegation which, if proved, would entitle him to such tolling. *See, e.g., Whalem/Hunt v. Early,* 233 F.3d 1146 (9th Cir. 2000) (*en banc*); *Nara v. Frank,* 264 F.3d 310, 320 (3d Cir. 2001) (remanding for evidentiary hearing on petitioner's allegations that he was entitled to equitable tolling because he suffered from

"ongoing, if not conclusive, periods of mental incompetency"); *Laws v. Lamarque,* 351 F.3d 919 (9th Cir. 2003) (remanding for factual development, noting that "Laws has made a good faith allegation [of mental impairment] that would, if true, entitle him to equitable tolling" and further holding that "the district court abused its discretion by denying the petition without ordering the development of the factual record on Laws' eligibility for tolling"); *Roy v. Lampert,* 465 F.3d 964 (9th Cir. 2006) ("a habeas petitioner should receive an evidentiary hearing when he makes a good faith allegation that would, if true, entitle him to equitable tolling"); *Hunter v. Ferrell,* 587 F.3d 1304 (11th Cir. 2009) (remanding for evidentiary hearing on the ground that "under the totality of the circumstances, . . . Hunter's evidence, while not sufficient to establish definitively that the filing deadline should be equitably tolled . . . is sufficient to raise a factual issue").

Here, Hill has made factual allegations which, if true, will entitle him to equitable tolling. We further point out that unlike Hill who has submitted sworn affidavits and other evidentiary support for his claim to tolling, the respondent has offered no evidentiary support whatsoever for its position that Hill is not entitled to tolling. Hill's factual assertions, supported by evidence, are sufficient to raise a question regarding whether he might arguably be entitled to tolling. Thus, at a bare minimum, such a hearing should be scheduled. *See generally Purkey v. United States,* 729 F.3d 860 (8th Cir. 2013) (factual allegations in a habeas petition should be accepted as true, even if improbable) (citing *Machibroda v. United States,* 368 U.S. 487, 496 (1962)). As noted by the Supreme Court in *Baggett v. Bullitt,* 377 360, 375 (1964), it has been recognized that the "exercise of a court's equity powers . . . must be made on a case by case basis." Further, the "flexibility" inherent in "equitable procedure" is vital "to meet new situations [that] demand equitable intervention." *Holland,* 560 U.S. at 648. This is such a case - one that demands equitable intervention by this habeas Court.

Presumably, the respondent will also assert in his response to this amended petition that Claim II and Claim III are also barred by limitations. For all the reasons discussed above, Hill is entitled to equitable tolling on these claims as well. Additionally, even though these two additional claims are raised by Hill after the timely filing of his initial petition, they "relate back" to that timely filing because all three claims come from the "same nucleus of operative fact." *Mayle v. Felix,* 545 U.S. 644 (2005). For this additional reason, none of Hill's claims are time barred.

## Procedural Default

### 1. "Cause" and Prejudice are Present.

The State also asserts that Hill's claim is procedurally defaulted because he did not "properly file" a petition for post-conviction relief in state court under Rule 37. Hill acknowledges that he did not "properly file" his petition; however, for the reasons set out below "cause" exists to excuse Hill's default of Claim I, and there is no default at all with respect to Claims II and III. Assuming for the sake of argument that Claims II and III are in fact defaulted, "cause" is also present to excuse Hill's default on those claims.

The law in this area is well settled: Under the "procedural default" doctrine, a habeas petitioner who has failed to comply with a State's "adequate and independent" procedural rule by failing to raise a claim for relief properly and timely in the state court system may be barred from raising that claim in federal habeas court, unless the petitioner can show both "cause" for failing to raise the claim in the state courts, and "prejudice" resulting therefrom. *Wain wright v. Sykes,* 433 U.S. 72 (1977).

Further, before a default can occur in the first place, the prisoner must have failed to raise his claim in a state court proceeding where that claim is cognizable. If the prisoner does not raise his claim in a state court proceeding where the claim is cognizable, there is simply

no violation of any state court procedure.  This principle is so elementary that citation to authority would unduly lengthen this petition.  *But see generally* Hertz & Liebman, <u>Federal Habeas Corpus Practice and Procedure</u> §26.2© (6th Ed.) ("[t]he procedural default doctrine does not come into play unless a default cognizable in federal court has occurred.  The doctrine thus applies only if the state makes the default cognizable, . . .").

If a default has actually occurred, the existence of "cause" "must ordinarily turn on whether the prisoner can show some objective factor external to the defense impeded his efforts to comply with the State's procedural rule."  *Murray v. Carrier,* 477 U.S. 478, 488 (1986).  More to the point in this particular case, the Supreme Court has held that "cause" is established where there is a showing that "the factual or legal basis for a claim was not reasonably available to counsel, or that 'some interference by officials' made compliance impracticable, . . ."  *Id.* at 488.  *See also Reed v. Ross,* 468 U.S. 1, 14 (1984) ('reasonably unknown facts").

For the following reasons, this Court should reject the respondent's defense of default and address the merits of all three claims.

**<u>Claim I:</u>**

Claim I is procedurally defaulted because it was cognizable under Rule 37 but it was not raised in a timely petition.  However, "cause" is present to excuse Hill's default on this claim because the factual basis for the claim was not "reasonably available" to him during the ninety-day period within which he could have "properly filed" his Rule 37 petition.  As discussed in detail throughout this petition, during that entire time period Hill was led to believe and was under the reasonable impression that he would become parole eligible after serving approximately seven (7) years of his total sentence. Hill had every right to assume that the information provided by his lawyer was correct and rely on counsel's assurance that

he would become parole eligible because as the Supreme Court has made clear, a "strong presumption" exists that counsel is effective. *See Strickland v. Washington,* 466 U.S. 664, 472 (1984).

The respondent asserts that Hill cannot establish "cause" because, even assuming that his attorney misadvised him, he has no right to counsel in a postconviction proceeding. First, contrary to that assertion, the Supreme Court has held that prisoners such as Hill enjoy an equitable right to both post-conviction counsel and effective post-conviction counsel. *Martinez v. Ryan,* 566 U.S. 1 (2012). Even if that were not the law, it would not matter. The issue of "cause" here really does not hinge at all on whether counsel was "ineffective." Instead, it depends on Hill's state of mind and what he reasonably believed, based on counsel's advice and information, before the plea and during the relevant ninety (90) day Rule 37 time period.

The State's assertion also impliedly assumes Hill had a crystal ball. He did not. According to the State, apparently Hill should have *anticipated* and/or *assumed* that his parole eligibility would be nullified at some point in time in the future. This position is ridiculous and requires no further discussion.

Again, as with the limitations issue, the respondent has offered no evidentiary support whatsoever for his position. On the other hand, Hill has supported his assertions with *actual evidence*. Thus, the facts and circumstances in this situation compel a finding that Hill has "cause" for his failure to seek state post-conviction relief under Rule 37. The proof shows thus far, and will further show at a "cause and prejudice" hearing, that he was not reasonably aware that his parole eligibility date had changed until after his Rule 37 time limit had expired. This places his case squarely within the reasoning of *Murray v. Carrier, supra. See also James v. Cain,* 56 F.3d 662, 665-66 (5th Cir. 1995) ("cause" sufficient to avoid writ

abuse defense was established because petitioner, who claimed that he was not adequately informed of consequences of guilty plea, did not fully learn of plea's implications for parole eligibility until after filing his first federal habeas corpus petition); *Meagher v. Dugger,* 861 F.2d 1242, 1244-46 (11th Cir. 1988) ("cause" was present because petitioner reasonably believed state court's sentencing order was consistent with plea bargain); *United States v. Gattas,* 862 F.2d 1432, 1435 (10th Cir. 1988) ("cause" for failing to raise sentencing report issue was present because petitioner could not reasonably have discovered violations until parole review).

"Prejudice" is also present in this case. Although the Supreme Court has not yet provided a precise definition of the "prejudice" half of the "cause" and "prejudice" exception to the procedural default doctrine, the Court has held that the error must have worked to the petitioner's "actual and substantial disadvantage." *United States v. Frady,* 456 U.S. 152, 170 (1982). In the present case, "prejudice" is clearly present because of the meritorious nature of Hill's claim. The error in this case has resulted in Hill having to spend *at least twenty years more prison time than what was contemplated when he agreed to plead guilty.* Without a doubt, this has worked to Hill's "actual and substantial disadvantage."

The respondent's additional assertion that Hill is not prejudiced because, basically, "he got a good deal from an objective standpoint," is also contrary to well settled precedent from the Eighth Circuit as well as Supreme Court precedent dealing with the appropriate remedy in these types of situations.

The respondent's assertion here really amounts to a statement that in his learned opinion, it would have been *objectively* unreasonable for a person like Hill to reject the plea offer regardless of whether or not he would be required to serve one hundred percent of his sentence. This position is contrary to settled law from the Eighth Circuit that the correct

analysis is a *subjective one, not an objective one.* The proper inquiry is *not* whether a "reasonable defendant" would have pleaded guilty or insisted on going to trial; instead, the correct inquiry is what *this particular defendant* would have done. *Basham v. United States,* 811 F.3d 1026 (8th Cir. 2016); *Watson v. United States,* 682 F.3d 740 (8th Cir. 2012)). In *Basham,* the Eighth Circuit specifically and pointedly rejected the same reasoning offered by the respondent in the present case, stating:

> The government posits several reasons why Basham should lose of the prejudice prong, and one deserves comment. The government argues Basham received a beneficial plea agreement and sentence, and, therefore, would not benefit by winning in the present appeal. The threat of a longer prison sentence is not a reason to deny §2255 relief when a petitioner is seeking vacation of an allegedly unconstitutional conviction, and *we are troubled by this suggestion. See Watson v. United States,* 682 F.3d 740, 745 (8th Cir. 2012) (holding, in the context of a *Strickland* challenge after a guilty plea, our prejudice inquiry is supposed to focus on whether the defendant can "establish a reasonable probability that he would have exercised his right to a trial but for counsel's ineffectiveness"). To begin, if we ruled for the government on this ground, §2255 relief would never be available to a criminal defendant who faced the possibility of a higher sentence during a retrial or resentencing. Correction of unconstitutional convictions and sentences should not be dependent on the sentence received. An individual contemplating whether to seek §2255 relief is capable of weighing his or her interest in vacating an unconstitutional conviction or sentence with the possibility of receiving harsher punishment after a new trial and/or sentencing hearing.

(Emphasis added). *See also McCoy v. Louisiana,* 138 S.Ct. 1500 (2018) (ultimately, the objective in a particular case is a personal decision to be made *subjectively* by the defendant himself).

This blunt statement by the Eighth Circuit highlights, in unmistakable terms, the faulty nature of the respondent's position. The question is not whether some hypothetical "reasonable defendant" would have rejected this plea. The question is whether *this defendant, John L. Hill,* would have rejected it. And the unrebutted proof thus far shows that he would have.

The respondent's assertion that Hill was not prejudiced is also contrary to Supreme

Court precedent relating to the proper remedy for these types of constitutional violations. In *Lafler v. Cooper,* 566 U.S. 156 (2012), the Supreme Court held that in situations involving ineffective assistance in plea negotiations, the remedy must be one that "neutralizes the taint" caused by the violation. Further, in *Santobello v. New York,* 404 U.S. 260 (1971), the Court held that a criminal defendant is entitled to the benefit of the plea bargain he enters into. Therefore, the remedy in Hill's case is to "neutralize the taint," give him the benefit of his bargain, and permit him to plead guilty and receive a sentence that will render him eligible for parole.

In sum, Hill has asserted facts sufficient to demonstrate that his default of Claim I is excused. At a minimum, and for the reasons set out above relating to his right to a hearing on the issue of equitable tolling, at a minimum Hill is entitled to a "cause and prejudice" hearing to further develop his right to review on the merits of his constitutional claim.

**Claim II:**

Claim II is not defaulted at all, so there is no need to delve into whether "cause" is present. This claim - that Hill's plea is constitutionally invalid due to misconduct on the part of the State - is not defaulted because the claim was not cognizable under Ark. R. Crim. P. 37. In an Arkansas post-conviction guilty plea case under Ark. R. Crim. P. 37, "the sole issue is whether the plea was intelligently and voluntarily entered with the advice of competent counsel." *Huff v. State,* 289 Ark. 404, 711 S.W.2d 801 (1986). *Accord, Branham v. State,* 292 Ark. 355, 730 S.W.2d 226 (1987). *See also Schneipp v. State,* 2012 Ark. App. 94 (2012) (trial court properly denied defendant's Rule 37 petition because defendant's sufficiency of the evidence, due process, illegal seizure, and severity of sentence claims were all subject to dismissal as being non-cognizable in a Rule 37 proceeding); *French v. State,* 2009 Ark. 443 (*per curiam*) (due process claims are not cognizable in a Rule 37 petition

following a guilty plea).

Assuming *arguendo* that Claim II was cognizable under Rule 37, this Court should still reject the respondent's default defense because "cause" and "prejudice" are present for all the reasons discussed above with regard to Claim I: The factual basis for Claim II was not reasonably available to Hill until after his ninety (90) day time limit had expired, and "prejudice" exists because of the meritorious nature of the claim.

**Claim III:**

Claim III is likewise not defaulted at all because like Claim II, it was not cognizable under Rule 37. *Huff v. State, supra; Branham v. State, supra; Schneipp v. State, supra; French v. State, supra.* Even if it is defaulted, "cause" and "prejudice" exist for all the reasons set forth above relating to Claim I and Claim II.

**All Claims:**

### 1. *Martinez v. Ryan*

Should the Court find that all of Hill's claims were cognizable under Rule 37; that they are defaulted because he did not raise them through Rule 37; and that Hill cannot establish "cause" and "prejudice" under *Smith v. Murray* and *Murray v. Carrier,* "cause" is alternatively present under *Martinez v. Ryan,* 566 U.S. 1 (2012). The respondent has taken the position that *Martinez* provides no refuge for Hill because he did not "properly file" a Rule 37 petition, which, according to the respondent, is required before *Martinez* can even arguably come into play. But the law is not quite so clear.

In *Martinez,* the Supreme Court held that where an initial state court collateral review proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance of counsel, the prisoner may establish "cause" for a default of an ineffective assistance claim in two circumstances: where the inmate was without counsel in the initial

review collateral proceeding in which the ineffective assistance claim could/should have been raised, or where the prisoner proceeded with counsel who failed to render effective assistance in the collateral proceeding.  The Court found no real difference between this "first designated [collateral] proceeding" and a direct criminal appeal, to which the right to counsel attaches, stating:

> Where, as here, the initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial, the collateral proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim.  This is because the state habeas court "looks to the merits of the clai[m]" of ineffective assistance, no other court has addressed the claim, and "defendants pursuing first-tier review . . . are generally ill equipped to represent themselves" because they do not have a brief from counsel or an opinion of the court addressing their claim of error.

The Court went on to emphasize that representation by counsel, and effective representation by counsel, are just as important and necessary in the inmate's state collateral "first-tier" collateral proceeding as they are in the inmate's direct appeal:

> As *Coleman* recognized, an attorney's errors during an appeal on direct review may provide cause to excuse a procedural default; for if the attorney appointed by the State to pursue the direct appeal is ineffective, the prisoner has been denied fair process and the opportunity to comply with the State's procedures and obtain an adjudication on the merits of his claims.  Without the help of an adequate attorney, a prisoner will have similar difficulties vindicating a substantial ineffective-assistance-of-trial-counsel claim. Claims of ineffective assistance at trial often require investigative work and an understanding of trial strategy.  When the issue cannot be raised on direct review, moreover, a prisoner asserting an ineffective-assistance-of-trial-counsel claim in an initial-review collateral proceeding cannot rely on a court opinion or the prior work of an attorney addressing that claim.  To present a claim of ineffective assistance at trial in accordance with the State's procedures, then, a prisoner likely needs an effective attorney.

The Court further pointed out that "the same would be true" with respect to the inmate who was totally without counsel to represent him in his first-tier collateral proceeding:

> The prisoner, unlearned in the law, may not comply with the State's procedural rules or may misapprehend the substantive details of federal constitutional law. While confined to prison, the prisoner is in no position to develop the evidentiary basis for a claim of ineffective assistance, which often turns on

evidence outside the trial record.

A prisoner's inability to present a claim of trial error is of particular concern when the claim is one of ineffective assistance of counsel.

Based on these concerns, and as an "equitable" matter rather than as a "constitutional" matter, the Court ultimately held that when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, "cause" for a procedural default is present in two circumstances: (1) where the inmate did not have counsel in those proceedings, or (2) where the inmate did have counsel in those proceedings, but counsel was ineffective.

The question here is thus (assuming arguendo that the factual basis for Hill's claims was reasonably available to him during the relevant time period) whether *Martinez* applies and excuses his failure to raise his claims in a timely petition for relief under Ark. R. Crim. P. 37. Hill submits that it does.

First, it cannot be disputed that Ark. R. Crim. P. 37 is the type of collateral "first-tier" collateral state court proceeding to which the Court's decision in *Martinez* is tailored. This is because under Arkansas law, claims of ineffective assistance of trial counsel cannot be raised on direct appeal, and Rule 37 provides the first vehicle, as a practical matter, for an inmate to raise and litigate claims of ineffective assistance of counsel. *See Trevino v. Thaler,* 133 S.Ct. 1911 (2013); *Sasser v. Hobbs,* __ F.3d __ (8th Cir. 2013), *reh'g denied,* __ F.3d __ (8th Cir. Feb. 27, 2014).

Second, although the Court in *Martinez* did not specifically address the situation involving an inmate who filed a petition for collateral relief but did not "properly file" it under *Artuz v. Bennett,* 531 U.S. 4 (2000), the reasoning behind the Court's decision strongly supports, if not demands, a finding that such an inmate is entitled to the benefit of the decision. The Court in *Martinez* emphasized and discussed, in detail, the *pro se* inmate's

31

disadvantaged position in collateral proceedings in order to point out the importance of representation by competent counsel in those proceedings.  As noted above, the Court specifically pointed out that the *pro se* inmate "is in no position to develop the evidentiary basis for a claim of ineffective assistance . . ."  The Court noted that "[a] prisoner's inability to present a claim of trial error is of particular concern when the claim is one of ineffective assistance of counsel."

In doing so, the Court in *Martinez* explained the basis for its holding that the lack of counsel, or the ineffectiveness of counsel, in collateral proceedings involving ineffective assistance claims for relief amounts to "cause" for a procedural default: These circumstances amount to "cause" because of the importance of this collateral stage of a case in States where this is the first opportunity for an inmate to raise a claim of ineffective assistance of counsel. The Court did not go so far as to state that the collateral review stage of a case is a "critical stage" of the proceedings for purposes of the Sixth Amendment right to counsel, but it was not necessary for the Court to go that far.  The point is that the collateral-review stage of a case, in a State where a claim of ineffective assistance of trial counsel must be raised at that stage or forever waived, is so important that the absence of the guiding hand of effective counsel at that stage amounts to "cause" for any procedural default on federal habeas. Regardless of whether the collateral stage (in Arkansas, the "Rule 37" stage) is a "critical stage" or not, the point made by the Court in *Martinez* is that the right to counsel at trial, and the corresponding right to effective assistance of counsel at trial, are "bedrock":  so fundamental and so deserving of protection by the courts that an inmate who has no counsel or has ineffective counsel in collateral proceedings cannot be found guilty of defaulting his claims relating to those fundamental rights.  Indeed, the Court made that clear when it stated:

A prisoner's inability to present a claim of trial error is of particular concern when the claim is one of ineffective assistance of counsel. The right to the effective assistance of counsel is a bedrock principle in our justice system. It is deemed as an "obvious truth" the idea that "any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him." Indeed, the right to counsel is the foundation for our adversary system. Defense counsel tests the prosecution's case to ensure that the proceedings serve the function of adjudicating guilt or innocence, while protecting the rights of the person charged. "The defendant requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence."

(Citations omitted)

On its face, the Supreme Court's decision in *Martinez* clearly provides a refuge for the very few Arkansas inmates who are lucky enough or savvy enough to prepare and properly file their own Rule 37 petitions. Those who do make it that far, and who either proceeded *pro se* or with counsel who provided ineffective assistance in those proceedings, may rely on *Martinez* and establish "cause" for any defaulted ineffective-assistance claims they raise in federal habeas court. The question is whether inmates such as John Hill, i.e., the *most disadvantaged, and the ones with the least amount of legal knowledge,* should also receive the benefit of *Martinez.* The reasoning behind the Court's decision in *Martinez,* as well as logic and common sense, compel an affirmative answer to that question. The Court's opinion in *Martinez* was based almost exclusively on two fundamental truths: (1) that the right to counsel, and effective counsel, at trial is "bedrock" and so essential to our criminal justice system that it must be protected; (2) that inmates are ill-equipped to attempt to assert that right on their own. The Court made it crystal clear that the right to effective assistance of trial counsel is far to important and fundamental to say that it was waived simply because an inmate was too unskilled to properly raise it.

These are the underpinnings of the Court's decision in *Martinez*, and they compel a finding that "cause" exists for Hill's alleged procedural default. *Martinez* permits a finding

of "cause" for defaulted habeas claims asserted by (1) the inmate who was smart enough and knowledgeable enough to file his own Rule 37 petition, (2) the inmate who had the funds to hire counsel to prepare and file a Rule 37 petition for him, and (3) the inmate who was savvy enough to properly file his own Rule 37 petition and raise a claim sufficiently meritorious to gain the attention of the circuit judge and obtain appointed counsel. If *Martinez* protects *those* inmates from a finding that their habeas ineffective-assistance claims are defaulted, then it must certainly protect the inmate who is *more disadvantaged*, i.e., the inmate who did not know about Rule 37 at all; the inmate who did not "properly file" his petition because he did not know the filing deadline or all of the other procedural "requirements"; the inmate who knew about Rule 37 but lacked the ability to prepare a petition on his own; the inmate who did not have access to the facts that would support a claim for relief under Rule 37; and the inmate who lacked the funds to hire counsel to prepare and file a Rule 37 petition for him. To say that *Martinez* benefits the former category of inmates, but not the latter, defies logic and common sense and runs totally contrary to the singular reasoning behind the Court's decision in that case.

The Eighth Circuit has not had occasion yet to address the question of whether the benefit of *Martinez* may be extended to an inmate who filed a state petition for post-conviction relief but did not "properly file" that petition. And contrary to the respondent's insinuation, the lower courts in Arkansas are split on this question. Indeed, at least one United States Magistrate Judge in the Eastern District of Arkansas has held that *Martinez* can apply to all of these prisoners.

More specifically, United States Magistrate Judge Beth Deere has held that an inmate who *failed to file a Rule 37 petition at all* is entitled to the benefit of *Martinez. Castillo v. Hobbs,* U.S.D.C. No. 5:14CV00368 JM/BD. That case involved Arkansas inmate Rene

Castillo who had a potentially meritorious *Hill v. Lockhart* federal habeas corpus claim for relief. Castillo, who pleaded guilty to a drug charge, never filed a petition for relief under Ark. R. Crim. P. 37 at all. Nevertheless, Judge Deere reasoned in her <u>Recommended Disposition</u>: "The lack of counsel raises a . . . colorable cause for Mr. Castillo's apparent procedural default. In some circumstances, the lack of counsel can establish cause for a petitioner's procedural default. *Martinez v. Ryan,* 132 S.Ct. 1309 (2012); *Trevino v. Thaler,* 133 S.Ct. 1911 (2013). Mr. Castillo's lack of counsel, and the trial judge's specific instruction that he could not file a Rule 37 petition, brings this case squarely within the *Martinez* rule for establishing "cause." That recommendation was accepted in full by United States District Judge James Moody. *Castillo,* U.S.D.C. No. 5:14CV00368 JM/BD (Jan. 4, 2016).

The respondent altogether fails to acknowledge the decision in *Castillo* but instead attempts to direct this Court's attention to other unreported lower court decisions which hold, apparently, that *Martinez* provides no protection for an inmate similarly situated to Hill. The decisions relied on by the respondent have no bearing on the instant case, for at least two reasons. First, they are not binding on this Court because they are not Eighth Circuit decisions. Second, unlike the facts presented in those cases, in the instant case the petitioner *did* file a state petition for collateral relief. For the reasons set out above, the reasoning employed by the court in *Castillo* is absolutely sound and should be accepted and followed again.

*Castillo* is not the only lower federal court decision in Arkansas holding that *Martinez* can apply to a prisoner in Hill's situation. In *Love v. Payne,* U.S.D.C. No. 5:19-cv-252-DPM (E.D. Ark. 2020), Chief Judge Price Marshall addressed the question and stated:

On Love's defaulted claims, he makes a strong argument from *Martinez's* reasoning that this exception applies. There is no binding precedent, though; and courts have divided. *Compare, e.g., Jones v. Pennsylvania Board of Probation and Parole,* 492 F. App'x 242, 246-47 (3d Cir. 2012) (unpublished opinion) *with Castillo v. Kelley,* E.D. Ark. No. 5:14-cv368-JM-BD, 2015 WL 9595464 at *3 (E.D. Ark. 2015).

In sum, Hill is entitled to the benefit of the Supreme Court's decision in *Martinez.* The logic behind *Martinez* compels a finding that the decision in that case should inure to his benefit even more than to the benefit of the knowledgeable and legally savvy inmate who falls into the former category. Hill, as much or more than any other inmate with defaulted claims of ineffective assistance, has "cause" for his default under the logic and reasoning that shaped the Court's decision in *Martinez.*

It is also clear that Hill's claims are "substantial." In *Martinez,* the Supreme Court held that "cause" may be established by an inmate who was *pro se* in his state post-conviction proceedings if the defaulted claim that he seeks to raise in his federal habeas proceedings is a "substantial" one. For a claim to be "substantial" within the meaning of *Martinez,* a prisoner must only

> demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

*Martinez,* 566 U.S. at ___ (citing *Miller-El v. Cockrell,* 537 U.S. 322 (2003)). *Miller-El,* of course, deals with the question of what standard applies when determining whether to issue a Certificate of Appealability. Therefore, and in other words, the test for whether a claim is "substantial" under *Martinez* is the same as the test for issuance of a Certificate of Appealability. As the 9th Circuit held in *Detrich v. Ryan,* ___ F.3d ___ (9th Cir. Sept. 3, 2013) (*en banc*),

> Under the standard for issuing a Certificate of Appealability, which the Court incorporated in its definition of substantiality, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El,* 537 U.S. at 336 (internal quotation marks and alterations omitted). Stated otherwise, a claim is "insubstantial" if "it does not have any merit or . . . is wholly without factual support." *Martinez,* 132 S.Ct. at 1319.

In *Miller-El v.Cockrell*, 537 U.S. 322 (2003), the Supreme Court held that in determining whether to issue a COA to a habeas petitioner, the court must "limit its examination to a threshold inquiry into the underlying merits of his claims." The Court elaborated on the limits of the proper analysis for determining whether to issue a COA as follows:

> The COA determination under §2253 requires an overview of the claims in the habeas petition and a general assessment of their merits. We look to the District Court's application of AEDPA to petitioner's constitutional claims and ask whether that resolution was debatable amongst jurists of reason. *This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it.* When a court of appeals side steps this process by first deciding the merits of an appeal, and then justifying its denial of a COA based on its adjudication of the actual merits, it is in essence deciding an appeal without jurisdiction.

*See also id.* at *11 ("we do not require petitioner to prove. . . that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail"). More to the point, the Court stated, *id.* at *13: "The question is the debatability of the underlying constitutional claim, not the resolution of that debate."

The Eighth Circuit has also held that the COA standard is a "modest" one. *Randolph v. Kemna,* 276 F.3d 401, 403 n.1 (8th Cir. 2002). Indeed, "the COA can be granted" so long as "the petitioner's claim does not appear utterly without merit after a quick look." *Mateo v. United States,* 310 F.3d 39, 42 (1st Cir. 2002) (following *Jefferson v. Welborn,* 222 F.3d 286, 289 (7th Cir. 2000)). *See also Sechrest v. Ignacio,* 549 F.3d 789, 803 (9th Cir. 2008)

("quick look at the face of the petition"); *Gibson v. Klinger,* 232 F.3d 799, 803 (10th Cir. 2000) ("only take a quick look . . . to determine whether [the petitioner] has facially alleged the denial of a constitutional right"). For the purpose of determining whether a COA should be granted, the Court must accept as true the petitioner's factual allegations. *Slack,* 529 U.S. at 483-84 (the appropriate inquiry to determine whether a COA should issue is whether reasonable jurists could debate whether the petition *states a claim* under the Constitution).

In the present case, the "modest" *Slack/Barefoot/Miller-El* standard is satisfied as to all of Hill's claims because, as discussed above, he has alleged facts which clearly demonstrate his entitlement to an evidentiary hearing on the merits. Therefore, it necessarily follows that the claims are "substantial" under *Martinez.*

### 2. "Innocence of the Sentence"

Should the Court disagree with Hill's procedural default arguments thus far, Hill finally asserts that the merits of his three claims should all be addressed because Hill is "actually innocent" of the sentence he received.

It appears that few federal habeas courts have dealt with the question of what it means to be "actually innocent" of a sentence. In *Dugger v. Adams,* 489 U.S. 401 (1989), a death case, the habeas applicant argued that the *Murray v. Carrier* exception applied to him because failing to reach the merits of his claim based on *Caldwell v. Mississippi* would result in a "fundamental miscarriage of justice." The Supreme Court declined to "undertake . . . to define what it means to be 'actually innocent' of a death sentence." *Id.* at 408 n.6. Instead, the Court simply stated that the record did not support the conclusion that a fundamental miscarriage of justice occurred that undermined the accuracy of the death sentence that Adams received.

In *Smith v. Murray,* 477 U.S. 527, 537-38 (1986), however, the Court applied the

"fundamental miscarriage of justice" principle to an alleged sentencing error in a capital case. The Court set forth the following standard: Habeas review of a defaulted claim is available if the petitioner can make a "substantial showing that the alleged error undermined the accuracy of the guilt or sentencing determination." *Id.* at 539. In *Dugger v. Adams,* Justices Blackmun, Marshall, and Stevens agreed that "even this narrow standard makes clear that the 'fundamental miscarriage of justice' principle is applicable to allegations of capital sentencing errors." *Adams,* 489 U.S. at 415.

The "actual innocence of the sentence" test has also been applied in non-capital cases, including in the Eighth Circuit. *Pilchak v. Camper,* 935 F.2d 145 (8th Cir. 1991); *Jones v. Arkansas,* 929 F.2d 375 (8th Cir. 1991). *See also Mercer v. Armontrout,* 864 F.2d 1429, 1434 (8th Cir. 1988) (citing *Smith v. Murray* and stating that procedural default may be excused if a fundamental miscarriage of justice has occurred where "the alleged error undermined the accuracy of the guilt or sentencing determination"); *Smith v. Armontrout,* 888 F.2d 530 (8th Cir. 1989) (holding that the *Carrier* innocence exception should be applied "in a proper case" where sentencing issues are involved).

*Adams, Smith,* and *Carrier* all support a rule of law that the "actual innocence" exception to the procedural default doctrine is not limited to situations in which the habeas applicant can show that he is "actually innocent" of the crime itself. Indeed, in *Pilchak,* the Eighth Circuit stated:

> It is difficult to conceive of a more "fundamentally unjust" situation than we have in this case. Pilchak was entitled to a trial before an unbiased jury while being represented by a competent lawyer, even if we concede that the evidence available to the prosecution may have been sufficient to convict her of drug conspiracy. More to the point in the application of the *Murray* exception, however, is that Pilchak, in this case, was not the proper subject for a sentence of a lifetime of incarceration.

935 F.2d at 148. Significantly, the court in *Pilchak* held that the exception to the "cause and prejudice" requirements can apply even if the evidence was legally sufficient to convict.

In *Jones v. Arkansas, supra,* the Eighth Circuit also stated:

> Although recognizing that the *Carrier* actual innocence exception did not translate easily into the sentencing phase of a capital trial, the Court nevertheless did so in *Smith v. Murray,* 477 U.S. 527, 537, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986). If one is "actually innocent" of the sentence imposed, a federal court can excuse the procedural default to correct a fundamentally unjust incarceration. *Id.; Dugger v. Adams,* 489 U.S. 401, 411 n.6, 109 S.Ct. 1211, 1217 n.6, 103 L.Ed.2d 435 (1989); *Smith v. Armontrout,* 888 F.2d at 545; *Stokes v. Armontrout,* 893 F.2d 152, 156 (8th Cir. 1989). **It would be difficult to think of one who is more "innocent" of a sentence than a defendant sentenced under a statute that by its very terms does not even apply to the defendant.**

929 F.2d at 378 (emphasis added).

The circuits appear to be split, however, on the question of whether an "actual innocence" exception applies in the context of noncapital sentencing. The Second Circuit has held that the doctrine does apply in a noncapital case where a constitutional error undermines the accuracy of the sentence. *Spence v. Superintendent, Great Meadow Corr. Facility,* 219 F.3d 162 (2d Cir. 2000). The Second Circuit has declined to extend the exception, however, where "purely legal errors" were committed in a case involving a prisoner who claimed that his three prior convictions should have only counted as one conviction for purposes of sentencing him under his state's habitual offender statute. *Poindexter v. Nash,* 333 F.3d 372 (2d Cir. 2003). In contrast, the Fourth Circuit has extended the "actual innocence" exception to noncapital sentencing, where the prisoner claimed that he was "actually innocent" of a sentence imposed under his state's habitual offender statutes. *United States v. Mikalajunas,* 186 F.3d 490 (4th Cir. 1999). In *United States v. Maybeck,* 23 F.3d 888 (4th Cir. 1994), the Fourth Circuit also applied the exception in a situation very similar to King's, reasoning that applying the "actual innocence" exception in capital and

40

noncapital sentencing cases meets the "objective of protecting defendants from sentencing based on elements of crimes for which they are conclusively innocent." The Fifth Circuit has followed the Fourth Circuit's lead and extends the actual innocence doctrine to noncapital sentencing cases, at least in the context of claims of innocence to the predicates of a habitual offender sentence. *Haley v. Cockrell,* 306 F.3d 257 (5th Cir. 2002), *vacated by Dretke v. Haley,* 541 U.S. 386 (2004). On the other hand, the Tenth Circuit has apparently held that an offender cannot be "actually innocent" of a noncapital offense. *United States v. Richards,* 5 F.3d 1369 (10th Cir. 1993). In that case, the Tenth Circuit dismissed an "actual innocence" claim to a noncapital sentence where the offender based his "innocence" to an enhanced sentence on a subsequent change in the interpretation of a sentencing law.

The United States Supreme Court had an opportunity to resolve whether the "actual innocence" exception applies in the context of noncapital sentences when it granted certiorari in *Dretke v. Haley,* 540 U.S. 945 (2003). However, the Court declined to reach the issue, holding instead that "a federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default." *Dretke,* 541 U.S. 386, 393-94 (2004).

There appears to be a split of authority within the Eighth Circuit itself on the issue of noncapital sentencing "actual innocence." The Eighth Circuit, along with other circuits, has struggled with the issue. In *Waring v. Delo,* 7 F.3d 753 (8th Cir. 1993) (a post-*Sawyer,* pre-*Schlup* decision), the court noted that the application of the *Sawyer* standard in the noncapital sentencing context "raise[d] perplexing questions." The court recognized that, while language in *Smith v. Murray* and *Engle v. Isaac* indicated that expansion of the actual innocence exception might be warranted, other language in *Sawyer* seemed to point in the

41

other direction.  The court concluded that *Sawyer,* at the very least, mandated use of a narrow and objective standard where a petitioner alleged actual innocence of a noncapital sentence.

Hill also acknowledges, as he must, the decision of the Eighth Circuit in *Embrey v. Hershberger,* 131 F.3d 739 (8th Cir. 1997), where the court declined to extend the "actual innocence" exception to a noncapital sentencing situation.  The Eighth Circuit's *en banc* decision in *Embry* is at odds with its own decisions in *Pilchak* and *Jones;* however, the court in *Embrey* did not mention those cases.  Hill's case is not controlled by *Embrey.*

Hill's case is not controlled by *Embrey,* though, because it is not at all clear that *Embrey* overruled the Eighth Circuit's decisions in *Pilchak* and *Jones.*  Indeed, as noted above, the court in *Embrey* did not even mention those decisions.  Therefore, *Pilchak* and *Jones* remain good law in this Circuit, and they support his claim that he is "actually innocent" of the flat thirty (30) year sentence imposed upon him because the constitutional errors committed in this case "undermined the accuracy of the . . . sentencing determination." *Mercer v. Armontrout, supra.*

Why is Hill "actually innocent" of his thirty (30) year flat sentence with no parole?  First, he is "actually innocent" because his Oklahoma conviction does not even qualify as a "felony involving violence" under Act 1805 and §5-4-501(d).  Act 1805 says a defendant who is convicted of a "felony involving violence" and has been previously convicted of a "felony involving violence" must serve one hundred of his sentence.  §5-4-501(d)(2) provides a laundry list of the specific crimes that are "felonies involving violence."  Included in that list, in §5-4-501(d)(2)(A)(h), is Battery in the First Degree as set out in Ark. Code Ann. §5-13-201.  Battery in the First Degree is a Class B felony in some situations, Ark Code Ann. §5-13-201(c)(1); but in others it is a Class Y felony.  Ark. Code Ann. §5-13-201(c)(2) and (3).  The point is that Battery in the First Degree is an extremely serious crime of

42

violence in the State of Arkansas.

Ark. Code Ann. §5-4-501(d)(2)(B) provides that "a conviction of a comparable felony involving violence from another jurisdiction" qualifies as a "felony involving violence" for purposes of Act 1805. (This is obviously the statutory provision relied on by the ADC in determining that Hill must serve one hundred percent of his thirty (30) year sentence for Committing a Terroristic Act.) Does Hill's Oklahoma conviction truly qualify as a "felony involving violence"? It only so qualifies if it is "comparable" to the crime of Battery in the First Degree under §5-13-201. Hill submits that it is *not* "comparable."

Although we do not yet have possession of the Judgment (or "Sentencing Order") in the Oklahoma case, it appears that on or about May 21, 2012, Hill pleaded no contest to the charge of Assault with a Dangerous Weapon and was given a ten (10) year *suspended sentence*. A copy of the printout from the Woodward County, Oklahoma Circuit Court website is submitted separately as Petitioner's Exhibit J.

It is an elementary and longstanding principle that criminal laws must be strictly construed. *Ballew v. United States,* 160 U.S. 187 (1895). Application of that principle here leads to the conclusion that the crime for which Hill was convicted and given a suspended sentence in Oklahoma is not "comparable" to the crime of First Degree Battery in Arkansas. Contrary to the ADC's characterization of the crime Assault With a Deadly Weapon as a "felony involving violence," there are significant differences between that crime and the crime of First Degree Battery in Arkansas. First, in Arkansas a defendant convicted of Class Y Felony First Degree Battery may not receive a suspended sentence. *See* Ark. Code Ann. §5-4-301. Second, the crime of First Degree Battery is not committed in Arkansas unless the defendant actually cause "serious physical injury" to his/her victim. The crime of Assault With a Deadly Weapon in Oklahoma contains no such requirement. In fact, there is no

43

requirement that *any* physical contact at all with the victim take place for that crime to be committed. This is a *huge* distinction between the two crimes, and it necessarily means they are not "comparable." For these reasons, Hill is "actually innocent" of his sentence under Act 1805.

Hill is "actually innocent" of his sentence under Act 1805 for another, simpler reason: It is not the sentence he bargained for, and it is not the sentence for which the parties contracted. In simplest terms, because there has been a breach of the "constitutional contract" entered into in this case, Hill falls within this "actual innocence" exception.

For either of these reasons, the Court should excuse whatever procedural default may have been committed in this case and reach the merits of all three of Hill's plainly meritorious claims for relief. *Embrey v. Hershberger* (discussed above) poses no barrier to this Court's application of the "actual innocence" exception in the context of Hill's illegal noncapital sentence. This is true, regardless of whether this Court applies the standard set out in *Sawyer v. Whitley* or the standard set out in *Schlup v. Delo.* (The court in *Embrey* cited *Schlup* in its opinion but never really explained which of the two tests applies.) Under either test, Hill is "actually innocent" of his flat thirty (30) year prison sentence with no parole under Act 1805.

44

## **Conclusion**

For these reasons, the Court should grant an evidentiary hearing on the respondent's procedural defenses and on the merits; grant the Great Writ; and fashion appropriate relief "as law and justice require."

Respectfully submitted,


Craig Lambert
Craig Lambert
Ark. Bar No. 87100
P.O. Box 94040
North Little Rock, AR 72190
(501) 374-3559
wclambert@aol.com

*Counsel for John L. Hill*