UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JOHN L. HILL                                                                          PETITIONER
ADC #119492

V.                                      No. 4:20-CV-1390-JTR

DEXTER PAYNE,
Director, Arkansas Division of Correction                           RESPONDENT

## AMENDED MEMORANDUM AND ORDER[1]

### I.  Introduction

Following a domestic dispute with his wife, Petitioner John L. Hill ("Hill") was charged in Hempstead County Circuit Court with two counts of attempted murder, two counts of committing a terroristic act, and one count of being a felon in possession of a firearm. Upon advice from his retained trial counsel, Mickey Buchanan ("Buchanan"), Hill accepted a plea offer and was sentenced to 42 years in the Arkansas Department of Corrections. Hill, who was 57 years old at the time, was assured by his attorney that he would only have to serve approximately seven years before becoming parole eligible. Hill later learned that he would be required to serve *at least* thirty years of his sentence because he had previously been convicted of a violent felony in Oklahoma.

---

[1] On January 8, 2021, United States District Judge Lee P. Rudofsky signed a Reference Order, based on both parties' written consent, to allow a United States Magistrate Judge to exercise jurisdiction over this case. *Doc. 8.*

On November 24, 2020, Hill's retained habeas counsel, Craig Lambert ("Lambert"), initiated this action by filing a "placeholder" § 2254 habeas Petition. *Doc. 1*. Because he was "retained to represent Hill in these habeas proceedings less than a week ago," he noted it was likely he would later seek leave of court to file an amended Petition. *Doc. 1 at 7*. While acknowledging that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")'s one-year limitations period had expired, Lambert argued that, after crediting Hill with the time the limitations period was equitably tolled, his habeas Petition was timely. *Doc. 1 at 3*.

In his "placeholder" Petition, Hill argues only that he did not knowingly, voluntarily, or intelligently enter his guilty plea because his attorney provided ineffective assistance during plea negotiations. Respondent Dexter Payne filed a Response arguing that, because Hill did not initiate this habeas action within AEDPA's one-year limitations period, the Petition must be dismissed. *Doc. 5*.

After receiving permission from the Court, on April 22, 2021, Hill filed an Amended Petition for Writ of Habeas Corpus (*Doc. 15*) in which he alleged that: (1) his trial counsel was constitutionally ineffective during plea negotiations; (2) prosecutorial misconduct caused him to enter a guilty plea that was not knowing, voluntary, or intelligent; and (3) under the due process clause, he was entitled to the "benefit of his bargain," *i.e.*, parole eligibility after serving approximately seven years of his sentence. *Doc. 15 at 11–15*. Finally, he renewed his argument that, after

crediting him with the appropriate period of equitable tolling, his Petition was timely.[2]

In his Amended Response, Payne argued that Hill is not entitled to equitable tolling and that his habeas Petition is barred by the one-year statute of limitations. *Doc. 19*.[3] Hill has not filed a Reply, and the time to do so has passed.[4]

Before deciding the threshold statute-of-limitations issue, the Court must resolve several related preliminary matters.

In compliance with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules"), Respondent Payne attached to his Response several relevant documents from the underlying state trial court record. *Docs. 5-1 through 5-5; Doc. 11-2*. On April 20, 2021, Hill filed a "Notice of Filing of Petitioner's Exhibits," which included many documents that were *not* part of the state court record. *Doc. 13*. Among those documents were affidavits from Hill, his sister, and his plea counsel, and documents related to his Oklahoma conviction.

---

[2] Lambert requested an evidentiary hearing to further develop the equitable tolling issue. *Doc. 15 at 16–23*.

[3] Payne alternatively argues that Hill's claims are procedurally defaulted and lack merit. Because the Court finds that Hill's Petition should be dismissed as untimely, it need not address Payne's other grounds for dismissing the Petition.

[4] "A party seeking relief under 28 U.S.C. § 2254…may file a reply within seven (7) days of the response." Local Rule 7.2(b); *see also* § 2254 Rule 5(e) ("The judge must set the time to file [a reply] unless the time is already set by local rule.")

On June 21, 2021, Respondent Payne filed a Motion to Strike Hill's exhibits, in part, because he did not move for permission to expand the record under Habeas Rule 7. *Doc. 18*. Hill responded by filing a Motion for Leave to Expand the Record. *Doc. 20*.

It is unclear whether, under Habeas Rule 7, Hill was required to seek leave of court to expand the record under Habeas Rule 7. *Compare* Brian R. Means, Federal Habeas Manual § 5:10 (West 2021) ("Rule 7 does not require a litigant to secure a court order before submitting materials for the court to consider.") (citing *Shah v. U.S.*, 878 F.2d 1156, 1162 (9th Cir. 1989)) *with* R. Hertz & J. Liebman, Federal Habeas Corpus Practice and Procedure § 19.5 (Lexis 2021) (explaining that parties seeking to expand the record should do so through a "Habeas Rule 7 Motion"). Because some of the documents Respondent Payne seeks to strike are relevant to the issue of equitable tolling, I will consider those documents to be part of the record.[5]

Accordingly, Petitioner Hill's Motion for Leave to Expand the Record (*Doc. 20*) is GRANTED. Respondent Payne's Motion to Strike (*Doc. 18*) is DENIED, as moot. Because the record is sufficiently developed to allow me to rule on the issue

---

[5] This ruling is also in the interest of judicial efficiency because it will avoid the unnecessary "time and expense required [by] an evidentiary hearing." *See* Advisory Committee Notes to Habeas Rule 7.

of equitable tolling, Hill's request for an evidentiary hearing (embedded on pages 10 and 21 of his Amended Petition) is DENIED.[6]

## II. Discussion

Before deciding the issue of equitable tolling, it is important to understand the facts relevant to that issue, and the procedural history of this case in state court.

On August 10, 2018, Hill was involved in a violent domestic dispute with his wife, which involved him firing two gunshots at her while she was driving by in a car. *Doc. 5-3*. He was charged in Hempstead County Circuit Court with two counts of attempted murder, two counts of committing a terroristic act, and one count of being a felon in possession of a handgun. *Id.*

Buchanan conducted discovery and plea negotiations on behalf of Hill. On March 27, 2019, the prosecutor sent over a plea offer—if Hill pleaded guilty to two counts of committing a terroristic act and one count of being a felon in possession of a firearm, the two counts of attempted murder would be *nolle prossed*. As part of the offer, the prosecutor also agreed to recommend that Hill receive concurrent sentences of 30 years on the terroristic acts counts and a 12-year sentence on the felon in possession count, to run consecutive to the concurrent 30-year sentences. *Doc. 13 at 7*.

---

[6] *See Orthel v. Yates*, 795 F.3d 935, 938–39 (9th Cir. 2015) ("When the existing record is 'amply developed,' a district court is not required to hold an evidentiary hearing to further develop the factual record.").

According to Buchanan, his conversations with the prosecutor led him to believe that Hill would serve only approximately seven years of imprisonment before becoming eligible for parole. *Doc. 13 at 8*. He explained his understanding of the plea offer to Hill and advised him to take the offer.

In his affidavit, Buchanan states he did not know that, years earlier, Hill had pled "no contest" to one count of assault with a dangerous weapon in Oklahoma state court. *Doc. 13 at 10*.[7] Under Act 1805, "[a]ny person who commits a violent felony offense…subsequent to August 13, 2001, and who has previously been found guilty of or pleaded guilty or nolo contendere to any violent felony offense…shall not be eligible for release on parole by the board." Ark. Code Ann. § 16-93-609(b) (West).[8] Because of Hill's previous conviction of a violent felony offense in Oklahoma, this statue required him to serve 100% of the 30-year concurrent sentences on the terroristic acts counts.

On April 8, 2019, Hill accepted his attorney's advice and pleaded guilty to two counts of committing a terroristic act and one count of being a felon in possession of a firearm. The trial court accepted Hill's plea and sentenced him to an aggregate forty-two years in the Arkansas Department of Correction—thirty years

---

[7] During pretrial discovery, the prosecutor provided to Buchanan documents establishing that Hill previously had been convicted of this violent felony in Oklahoma. *See Doc. 15 at 18, n.4*. This suggests that Buchanan either did not review those documents or forgot he did before he signed his affidavit.

[8] This statute is also known as the "100% law."

for each terroristic act, to be served concurrently; and twelve years for the felon-in-possession count, to be served consecutively. *Doc. 11-2 at 8–10*. The final sentencing order was entered on May 10, 2019. *Doc. 5-5*. Hill did not file a direct appeal.

On May 28, 2019, eighteen days after the final sentencing order was entered, the ADC determined that Hill's two terroristic acts fell under Act 1805 and that Hill would be required to serve the entire 30-year sentence on those convictions. *Doc. 5-1 at 4*.[9] Despite the ADC's early determination of the time Hill would be required to serve on his sentences, Hill contends he did not learn that his 30-year sentence fell under the "100% law" until he received a timecard shortly after being transferred to the ADC's Diagnostic Unit on September 4, 2019.[10] *Doc. 13 at 18–19, ¶ 8*.

Hill was 57 years old at the time of his sentencing. He states that he "was shocked" when he learned that, instead of serving "approximately seven years" before becoming eligible for parole, he would be required to serve his entire 30-year

---

[9] The ADC's "Sentencing Summary" noted: "…360 months under Act 1805 for a prior Assault and Battery with a dangerous weapon in Oklahoma…so will serve entire sentence earning no good time on that part." *Doc. 5-1 at 4*.

[10] This statement in Hill's affidavit directly contradicts an earlier sworn statement by Hill in which he represents that, "[a]pproximately two and one-half months after the entry of [his April 4, 2019] plea, [he] was informed that his parole eligibility date was September of 2052." *Doc. 5-6 at 2*. Recognizing these conflicting sworn statements, Hill attempts to reconcile them by stating that his original "rough estimate" of June 2019 "was obviously off by a number of weeks." *Doc. 13 at 19, ¶ 10*. Because, Hill's equitable tolling argument fails, under either version of these facts, the Court will accept as true Hill's second statement—that he did not learn of the of his parole eligibility date until September 4, 2019—and thereby avoid the need to further address the matter.

7

sentence for committing terrorist acts and then begin serving his parole-eligible 12-year sentence for unlawfully possessing a firearm. *Doc. 13 at 19, ¶ 8*. Sometime in early September of 2019, Hill contacted his sister and asked her to get in touch with Buchanan. *Doc. 13 at 19*, ¶ 11.

Hill was in constant contact with his sister over the next several months, and she communicated with Buchanan on Hill's behalf. Hill also spoke directly with Buchanan on a few occasions. Throughout his communications with Buchanan, Hill "was told to be patient and…that there was no need for [him] to seek post-conviction relief in the courts because the matter was being handled by Mr. Buchanan and the prosecutor." *Doc. 13 at 20, ¶ 15*. Buchanan and Hill's sister submitted affidavits that generally corroborate Hill's version of these facts. *See Doc. 13 at 7–11, 28–30*.

In his affidavit, Buchanan states that he contacted the prosecutor as soon as he learned that Hill was sentenced under the "100% law." Buchanan told her that they "needed to correct the injustice done to Mr. Hill" and she said she would "look into it." *Doc. 13 at 9–10, ¶9*. Based on Buchanan's conversations with the prosecutor, he "earnestly believed...that [they], working together, would correct the injustice." *Id.*

Buchanan is "not certain about specific dates," and he can only confirm that his conversations with Hill, his sister, and the prosecutor, took place "after Mr. Hill's

time period for filing a Rule 37 petition had expired" on August 8, 2019.[11] *Doc. 13 at 9, ¶ 8.* Finally, Hill concedes that, by "some point in January 2020," he had learned that Buchanan was unable to correct his sentence, and he was "on his own" if he wanted to continue seeking relief. *Doc. 13 at 20, ¶ 16.*

Approximately three months later, on April 6, 2020, Hill filed an untimely *pro se* Rule 37 Petition arguing that Buchanan provided ineffective assistance of counsel when he advised Hill to accept the plea offer. *Doc. 5-6.* According to the publicly available court records, Hill's Rule 37 Petition remains pending in state court.[12]

AEDPA establishes a one-year limitations period for a state prisoner to file a timely § 2254 habeas Petition. 28 U.S.C. § 2244(d)(1). However, the limitations period is tolled during the pendency of "properly filed application for State post-conviction…review." § 2244(d)(2). [13]

If a petitioner fails to file his habeas Petition within AEDPA's one-year limitations period, the Court has discretion, in appropriate circumstances to toll the statute of limitations for equitable reasons. *Holland v. Florida*, 560 U.S. 631, 645–

---

[11] The Rule 37 Petition was required to be filed within ninety days of the May 10, 2019 sentencing order and judgment. Ark. R. Crim. P. 37.2(c)(i).

[12] *See State v. John Lindell Hill*, No. 29CR-18-394 (Hempstead Co., Ark. Nov. 9, 2018) (court records publicly available at "CourtConnect" on the Arkansas Judiciary's homepage: caseinfo.arcourts.gov (last visited Mar. 25, 2022)).

[13] Both parties agree that Hill is not entitled to statutory tolling because Hill's *untimely* Rule 37 Petition was not a "*properly filed*" application for state habeas relief. *Doc. 5 at 7–8*; *Doc. 15 at 16.*

46 (2010). However, absent equitable tolling, an untimely habeas Petition must be dismissed.

### A. Determining When The One-Year Limitations Period Began To Run On Hill's Federal Habeas Claims

Under AEDPA, there are four possible dates on which the one-year limitations period begins to run. *See* 28 U.S.C. § 2244(d)(1)(A)–(D). In most habeas cases, the limitations period begins to run from the later of, "the date on which the judgment became final by the conclusion of direct review or the expiration of the time limit for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Under this provision of AEDPA, which Respondent argues is controlling, the statute of limitations began to run on Hill's federal habeas claims on June 9, 2019 and expired on June 8, 2020.

According to Hill, because he did not learn that he would have to serve his entire 30-year sentence until after he was transferred to ADC custody on September 4, 2019, that date is when the statute of limitations began to run on his habeas claims. Even if the Court were to accept Hill's argument, the one-year limitations period would have expired on, or shortly after, September 3, 2020. Because Hill waited until November 24, 2020 to file his habeas Petition, it is *still untimely*. Thus, unless Hill can show he is entitled to equitable tolling, his habeas claims are time barred.

### B. Equitable Tolling

The one-year limitations period may be equitably tolled if a habeas Petitioner can show that he pursued his rights diligently, but that some extraordinary

circumstances stood in his way and prevented timely filing. *Muhammad v. United States*, 735 F.3d 812, 815 (8th Cir. 2013) (*quoting Holland v. Florida*, 560 U.S. 631, 649 (2010)). "The diligence required for equitable tolling purposes is reasonable diligence not maximum feasible diligence." *Id.* (internal quotation marks omitted). "The burden of demonstrating grounds warranting equitable tolling rests with the petitioner." *Earl v. Fabian*, 556 F.3d 717, 722 (8th Cir. 2009) (*citing Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Hill's equitable tolling argument is as follows: (1) the one-year limitations period did not begin running until on or about September 4, 2019, making his original filing deadline on or about September 4, 2020; (2) between September 4, 2019, and "some point in January 2020," when he learned from Buchanan that the trial court would not "correct his sentence," he was diligently pursuing and trying to protect his habeas claims, but Buchanan's reassurances that he was working to fix the problem "lulled [him] into inaction" and constituted extraordinary circumstances that prevented him from timely filing his habeas Petition; [14] and (3) because his

---

[14] Viewing Hill's and Buchanan's affidavits in a light most favorable to hill, Buchanan told Hill that his sentence would not be "corrected" by the trial court sometime between January 1 and January 31. Accepting these facts as true, Hill would be entitled to argue that he should receive *at least* four months of equitable tolling—September 4, 2019 to January 1, 2020.

Inexplicably, and without any supporting facts in the affidavits he submitted, Hill argues that:

> While it is difficult to calculate the exact number of days that should be tolled, at a minimum he is entitled to six to seven months of tolling, which easily brings him within the one-year limitations period. It was during this period of time (from the

11

November 24, 2020 Petition was filed within four months of the arguable deadline of September 4, 2020, his Petition should *not* be dismissed as untimely.

For the Court to accept Hill's argument, it must make a series of factual findings and legal conclusions that are not supported by the record and are in direct conflict with controlling case law.

First, the Court rejects the notion that "due diligence" did not require Hill to discover his parole eligibility date long before he alleges the ADC informed him of it on or about September 4, 2019.[15] Hill knew on the date of his plea and sentencing hearing, April 8, 2019, that he was 57 years old and he potentially faced serving 42 years in the ADC. Due diligence required him to make certain that his attorney, the prosecutor, and the sentencing judge were all aware, *at the sentencing hearing*, of his understanding that he would be eligible for parole in approximately seven years. Because the topic of his parole eligibility was *not* mentioned during his sentencing,

---

>    date of his plea in May of 2019 through at least the end of December 2019) that Hill was diligently pursuing his rights; was communicating with counsel about rectifying the injustice, and was led to believe that steps were in fact being take to do just that.

*Doc. 15 at 21*. Not only does this argument contradict Hill's contention that the statute-of-limitations did not begin to run until September 4, 2019, but Hill has not presented any evidence to suggest that he was "diligently pursing his right" from the date of his plea, which was actually April 8, 2019 *not* "May of 2019," until September 4, 2019.

[15] Hill argues that his case falls under the AEDPA provision which allows the statute of limitations to begin running from "the date on which the factual predicate of the claim or claims presented [in the habeas Petition] could have been discovered through the exercise of *due diligence.*" 28 U.S.C. § 2244(d)(1)(D) (emphasis added).

he was required to raise it himself, or, certainly, after the sentencing, ask Buchanan to provide him something, *in writing*, to confirm his eligibility for parole in seven years.[16] *Nothing* about Hill's decision to wait five months to discover something as important to a 57-year-old man as his parole eligibility date, *on a sentence totaling 42 years*, suggests he exercised "due diligence" to discover those crucially important facts.

Second, Hill argues he is entitled to equitable tolling, from September 4, 2019 to January 2020, because during that time he acted diligently but was thwarted from filing his § 2254 Petition by Buchanan's assurances he would "correct" his sentence. This argument simply defies credulity. No reasonable 57-year-old person, after learning they would be required to serve 100% of a 30-year sentence, instead of being parole eligible in approximately seven years, as represented to them by their attorney, would allow that same attorney to dither away another four or five months trying to "correct" the problem.

"A petitioner acts with diligence when, for example, he writes letters to his attorney asking her to file a habeas petition, contacts the court to learn about the status of his case, seeks to have his attorney removed for failure to pursue his case,

---

[16] There is *no mention* of parole eligibility in the: (1) written plea offer from the prosecuting attorney (*Doc. 13 at 6*); (2) Plea and Waiver Form signed by Hill (*Doc. 5-4*); or (3) plea and sentencing hearing transcript (*Doc. 11-2*). During the plea and sentencing, the trial court asked Hill whether he had read the Plea and Waiver Form, or had it read to him, and understood its meaning. Hill responded: "Yes." *Doc. 11-2 at 6*.

13

and files a pro se petition the very day that he learns it is late." *Williams v. Kelley*, 830 F.3d 770, 773 (8th Cir. 2016). Hill, like the petitioner in *Williams*, "failed to take any action to pursue his federal habeas rights even [when] it became clear that his hired attorney was not effectively pursuing the available remedies." Nothing about Hill's decision, on and after September 4, 2019, suggests he was acting with due diligence.

Third, because Hill has made *no* attempt to show he acted diligently either before September 4, 2019 or after January 2020, he apparently is taking the position that he was only required to exercise diligence during the time Buchanan was working to "correct" the sentence.

This approach simply does not square with United States Supreme Court and Eighth Circuit case law which requires that Hill act diligently both *before and after* the extraordinary circumstance ended—something Hill clearly did not do in this case. See, e.g., *Pace*, 544 U.S. at 418–19 (no equitable tolling where petitioner sat on his rights for years before the alleged extraordinary circumstance began and waited five months after it ended before filing his federal habeas petition); *Williams*, 830 F.3d at 773 (no equitable tolling where petitioner waited ten months after the alleged extraordinary circumstance ended before filing his federal habeas petition); *Gordon v. Arkansas*, 823 F.3d 1188, 1195–96 (8th Cir. 2016) (no equitable tolling where petitioner waited five months after the alleged extraordinary circumstance

14

ended before filing his federal habeas petition); *Nelson v. Norris*, 618 F.3d 886, 893 (8th Cir. 2010) (no equitable tolling where petitioner waited nine months after the alleged extraordinary circumstance ended before filing his federal habeas petition).

### III. Conclusion

The facts of this case are simple and straight forward. At the *latest*, Hill knew by the end of January 2020 that he could no longer rely on Buchanan's help and he was "on his own" to pursue his postconviction rights. At that point, he still had five months to file a timely § 2254 habeas Petition. He failed to do so. Instead, he waited *ten* months after the alleged extraordinary circumstance ended before filing his habeas Petition. As the Court noted in *Martin v. Fayram*, 849 F.3d 691, 698 (8th Cir. 2017): "Whether equitable tolling is appropriate is a fact intensive inquiry that depends on the totality of the circumstances present in a particular case." In this case, those facts make it clear that, because Hill did not diligently purse his rights, he is not entitled to equitable tolling.

IT IS THEREFORE ORDERED that Hill's Amended Petition for Writ of Habeas Corpus (*Doc. 15*) is DISMISSED, with prejudice.

IT IS FURTHER ORDERED that a certificate of appealability is hereby DENIED.[17]

---

[17] When entering a final order adverse to a petitioner, the Court must issue or deny a certificate of appealability ("COA"). Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts. "When, as here, the district court denies relief on procedural grounds, the petitioner seeking a COA must show both that jurists of reason would find it debatable

SO ORDERED this 7th day of April, 2022.

                                                            _____
                                                        UNITED STATES MAGISTRATE JUDGE

---

whether the petition states a valid claim of the denial of a constitutional right *and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.*" *Gonzalez v. Thaler*, 565 U.S. 134, 140–41 (2012) (internal quotation marks omitted) (emphasis added).